IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IRAQ MIDDLE MARKET | * | |
| DEVELOPMENT FOUNDATION | * | |
| | * | |
| v. | * | Civil No. CCB-10-2086 |
| | * | |
| MOHAMMED ALI MOHAMMED | * | |
| AL HARMOOSH | * | |
| | * | |
| | * | |
| | ****** | |

MEMORANDUM

This case arises from a loan provided by Iraq Middle Market Development Foundation

("IMMDF") to Al-Harmoosh for General Trade, Travel, and Tourism, Ltd. ("AGTTT"), an Iraqi

business owned by the defendant, Mohammed Ali Mohammed Al Harmoosh ("Al Harmoosh").

IMMDF has instituted this action against Al Harmoosh to collect upon a promissory note

guaranteeing this loan.  Now pending before the court is Al Harmoosh's motion to dismiss for

lack of subject matter jurisdiction on the grounds that IMMDF's claims are subject to arbitration.

The issues have been fully briefed and no hearing is necessary.  *See* Local Rule 105.6.  For the

reasons stated below, the defendant's motion will be granted.

BACKGROUND

IMMDF is a Texas corporation that provides capital to middle market businesses in Iraq.

In this capacity, it loaned two million dollars to AGTTT, an Iraqi business owned by Al

Harmoosh.  (Compl. ¶ 1–2, 6–7.)  The terms of this loan are contained within the "Medium Term

Loan Agreement" ("the Loan Agreement" or "the Agreement"), which Al Harmoosh signed on

behalf of AGTTT.  (Pl.'s Mem. Opp'n, Ex. A, Medium Term Loan Agreement ("Loan

Agreement").)  The Loan Agreement contains an arbitration clause, stating that "[a]ll disputes

controversies and claims between the parties which may arise out of or in connection with the

Agreement or a breach, termination or invalidity thereof, shall be finally and exclusively settled

by arbitration . . . ."  (*Id.* ¶ 24.2.)

As a condition of the issuance of the loan to AGTTT, IMMDF required Al Harmoosh to

personally guarantee repayment of the two million dollars.  It therefore required Al Harmoosh to

execute a document, labeled a promissory note, promising to pay this amount on demand ("the

Note").  (Compl. ¶ 8–9; *see also* Loan Agreement ¶ 8.1(p) (requiring the "[b]orrower" deliver a

"[n]otarized promissory note" before disbursement of the loan).)  The Note provided that the

promise to pay was in consideration for the loan issued by IMMDF to AGTTT.  Specifically, it

stated, "I, Mohammed A. Alharmoosh, . . . do hereby promise to pay US$2,000,000 (Two

million dollars) on demand to the order of [IMMDF] . . . , where I received this amount as a loan

from IMMDF per the Loan Agreement between [AGTTT] and IMMDF . . . ."  (Compl., Ex. A.)

The Note therefore constitutes one of the "Loan Documents," which the Loan Agreement defines

to include not only the Agreement but also "any related agreements, and any other documents

related to this transaction."  (Loan Agreement, General Conditions at 3.)

AGTTT failed to repay the loan, and IMMDF demanded payment on the Note.  (Compl.

¶ 11–12.)  When Al Harmoosh refused to pay, IMMDF commenced this action, asserting that Al

Harmoosh breached his obligations under the Note.  The defendant has moved to dismiss this

action in favor of arbitration pursuant to the Loan Agreement's arbitration provision.

DISCUSSION

Al Harmoosh has moved to dismiss this action for lack of subject matter jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(1).  In deciding a 12(b)(1) motion, a court "may consider

evidence outside the pleadings without converting the proceeding to one for summary

judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir.1999) (internal quotation

marks and citation omitted). Under the Federal Arbitration Act ("FAA"), a court must, upon

motion by a party, stay any proceeding that involves an issue subject to arbitration under a

written arbitration agreement. 9 U.S.C. § 3; *see also Choice Hotels Int'l, Inc. v. BSR Tropicana*

*Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001). If all issues in a proceeding are arbitrable,

"dismissal is a proper remedy;" accordingly, a party may properly invoke the FAA through a

motion to dismiss. *Choice Hotels*, 252 F.3d at 709–10.

"In deciding whether a party may be compelled to arbitrate a dispute, we apply ordinary

state law principles that govern the formation of contracts, and the federal substantive law of

arbitrability."[1] *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157, 160

n.1 (4th Cir. 2004) (internal quotation marks and citations omitted). The Supreme Court has

instructed that, when addressing "questions of arbitrability," a court must observe "a healthy

regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.,* 460 U.S. 1, 24, 103 S. Ct. 927 (1983). "[A]ny doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25; *see also Wachovia*

*Bank, Nat'l Ass'n v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006).

IMMDF argues that, because Al Harmoosh was not a party to the Loan Agreement

containing the arbitration clause, the present dispute, in which it asserts a breach of the Note, is

not arbitrable. Arbitration is generally a matter of contract, so "'a party cannot be required to

submit to arbitration any dispute which he has not agreed so to submit.'" *Int'l Paper Co. v.*

---

[1] IMMDF contends that the court should apply Maryland contract law in analyzing the formation and meaning of the
Note because the Note was notarized in Maryland. Despite the notarization, Al Harmoosh asserts the Note was
executed in Iraq, suggesting that Iraqi contract law should apply under Maryland's choice-of-law rules. *See Allstate
Ins. Co. v. Hart*, 327 Md. 526, 611 A.2d 100, 101 (1992) (noting that Maryland courts follow the principle of *lex
loci contractus* in determining which law to apply in interpreting contracts). Even if Maryland law applies,
however, the plaintiff's claims would be subject to arbitration. Accordingly, I do not need to decide which law
applies.

*Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (quoting

*United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S. Ct. 1347

(1960)). The Fourth Circuit has made clear, however, that an obligation to arbitrate may attach

even where both parties to the dispute have not personally signed the written arbitration

provision. *See id.* Rather, under "[w]ell-established common law principles," in certain cases,

"a nonsignatory can enforce . . . an arbitration provision within a contract executed by other

parties." *Id.* at 416–17; *see also Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir.

2006).

Most pertinent to the present case is the doctrine of equitable estoppel. In the context of

arbitration, this doctrine precludes a party "'from asserting that the lack of [another's] signature

on a written contract bars enforcement of the contract's arbitration clause when [the party] has

consistently maintained that other provisions of the same contract should be enforced to benefit

him.'" *Long*, 453 F.3d at 627 (quoting *Int'l Paper Co.*, 206 F.3d at 418 (4th Cir. 2000))

(alterations in original). Where a nonsignatory seeks to compel arbitration with a signatory to an

arbitration clause, the Fourth Circuit has held that equitable estoppel will apply if "the signatory's

claims arise out of and relate directly to the written agreement [containing the arbitration

clause]," which occurs "[w]hen each of a signatory's claims against a nonsignatory makes

reference to or presumes the existence of the written agreement." *Id.* (internal quotation marks

and citation omitted). It is not necessary, therefore, that the signatory "assert a cause of action

against the nonsignatory for breach of the contract containing the arbitration clause." *Id.* at 627–

28. "Instead, estoppel is appropriate if in substance the signatory's underlying complaint is based

on the nonsignatory's alleged breach of the obligations and duties assigned to it in the agreement,

regardless of the legal label assigned to the claim." *Id.* at 628 (internal quotation marks,

citations, and alterations omitted).

IMMDF's claims against Al Harmoosh meet the requirements of this test. Although

IMMDF has alleged a breach of the Note, this claim presumes the existence of the Loan

Agreement. IMMDF acknowledges in its complaint that it conditioned the loan to AGTTT on Al

Harmoosh's execution of the Note, and the Note references the Loan Agreement as providing

consideration for Al Harmoosh's promise to pay. Most significantly, because the Note

functioned as a guarantee of the loan to AGTTT, IMMDF would be unable to recover from Al

Harmoosh on the Note if AGTTT had repaid the loan pursuant to the Loan Agreement.

IMMDF's complaint, therefore, rests, in substance, upon Al Harmoosh's alleged breach under

the Loan Agreement—his failure to ensure AGTTT repaid the loan—even though it is styled as a

breach of an independent agreement. *Cf. id.* at 630 (granting the petition to compel arbitration

because, "if TLP had never issued the Note [containing the arbitration clause], the [signatory]

would have no basis for recovery against [the nonsignatory]"). IMMDF would have no basis for

recovery on the Note if it had not entered into the Loan Agreement. Accordingly, IMMDF is

estopped from asserting that Al Harmoosh is not a party to the arbitration clause.[2]

Although equitable estoppel requires Al Harmoosh to be considered a party to the

arbitration agreement, it does not answer the distinct question of whether the claims asserted fall

within the scope of the arbitration clause. *See id.* ("[E]stoppel does not preclude a party from

making the quite different argument that its claims do not fall within the scope of the arbitration

clause.") Here, the clause mandates arbitration for claims that "arise out of or in connection with

---

[2] Alternatively, had equitable estoppel not been found to apply in this case, under Maryland contract law, the claims would remain subject to the arbitration clause because the Note incorporates the Loan Agreement by reference. *See Wheaton Triangle Lanes, Inc. v. Rinaldi*, 236 Md. 525, 204 A.2d 537, 540 (1964) ("It is a long recognized rule that where a writing refers to another document, that other document is to be interpreted as part of the writing." (citations omitted)).

the [Loan] Agreement or a breach . . . thereof."  The Fourth Circuit has articulated a "significant

relationship" standard for determining the scope of arbitration clauses that employ substantially

similar language.  *Wachovia Bank*, 445 F.3d at 767.  Specifically, it has interpreted arbitration

clauses that encompass claims "'arising out of or relating to' a contract" to "embrace[] 'every

dispute between the parties having a significant relationship to the contract regardless of the label

attached to a dispute.'"  *Id.* (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging,

Inc.*, 96 F.3d 88, 93 (4th Cir. 1996)).  Such a relationship exists between IMMDF's claims and

the Loan Agreement.  IMMDF is seeking to collect on the Note only because a breach of the

Loan Agreement has occurred, and the Note was provided as a guaranty of AGTTT's obligation

under the Loan Agreement.

The present dispute is therefore distinguishable from the facts in *Wachovia Bank*.  There,

the Fourth Circuit held that an arbitration clause in a promissory note between a lender and

borrower did not mandate arbitration of a dispute arising from investment advice the lender

provided to the borrower.  *See id.* at 768.  Because the claims arose "exclusively from the

adviser-advisee relationship" between the parties, which was distinct from the lender-borrower

relationship, the claims lacked a significant relationship to the promissory note.  *Id.*  Indeed, the

facts giving rise to the claims in *Wachovia Bank* occurred before the execution of the promissory

note, and the determination of those claims would not require interpretation of the note.  *See id.*

at 768–69.  Here, in contrast, IMMDF was playing the role of lender when it entered into both

the Loan Agreement and the Note, and IMMDF's claims based upon the Note depend upon the

existence of the Loan Agreement.  At minimum, the success of IMMDF's claims under the Note

depends on AGTTT's breach of its obligations under the Loan Agreement. Accordingly, these

claims are significantly related to the Loan Agreement or a breach thereof and are arbitrable.[3]

For the foregoing reasons, the defendant's motion to dismiss will be granted. A separate

Order follows.


 January 20, 2011                                              /s/
Date                                                  Catherine C. Blake
                                                      United States District Judge

---

[3] IMMDF makes the additional argument that its claims do not fall within the scope of the arbitration clause because the clause applies to "disputes, controversies and claims between the parties," and the Loan Agreement identifies as parties only IMMDF and "[AGTTT] ('Borrower'), represented by [Al Harmoosh] . . . , in [his] capacit[y] as Managing Partner[]." (Loan Agreement, Special Conditions at 1.) I have already rejected the notion that Al Harmoosh may not be considered a "party" for purposes of the arbitration clause. In addition, applying Maryland law of contract interpretation—as IMMDF advocates—Al Harmoosh should be considered a party within the meaning of the arbitration clause.

       "Maryland follows the objective law of contracts," which seeks to determine "what a reasonable person in the position of the parties would have meant" by the contract language "at the time it was effectuated." *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 492 A.2d 1306, 1310 (1983). The Maryland Court of Appeals recently described this rule of interpretation as follows:

> We employ an objective approach to contract construction with the goal of
> interpreting the contract in a manner consistent with the parties' intent. . . . We
> achieve that objective by considering the plain language of the disputed
> provisions in context, which includes not only the text of the entire contract but
> also the contract's character, purpose, and "the facts and circumstances of the
> parties at the time of execution."

*Ocean Petroleum, Co., Inc. v. Yanek*, 416 Md. 74, 5 A.3d 683, 691 (2010) (quoting *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 488 A.2d 486, 488 (1985)). Thus, in the present case, I must consider not only the text of the Loan Agreement, but also that of the remaining Loan Documents and the circumstances of the Agreement's execution.

       In light of these factors, Al Harmoosh, as well as AGTTT, should be considered a "[b]orrower" and, therefore, a party to the loan. Paragraph 8.1(b) of the Loan Agreement obligates the "Borrower" to deliver to IMMDF a "[n]otarized promissory note." (Loan Agreement ¶ 8.1(p).) Yet, as IMMDF alleged in the complaint, IMMDF at that time had demanded that Al Harmoosh personally provide this note. Furthermore, in the Note, Al Harmoosh states, "*I* have received [two million dollars] as a loan from IMMDF per the Loan Agreement . . . ." (Compl., Ex. A (emphasis added).) Due to the manner in which the Loan Documents merge the benefits and obligations of AGTTT and Al Harmoosh and the structure of the transaction, which imposed personal liability for the loan on Al Harmoosh, a reasonable person at the time of the contract's execution would have considered Al Harmoosh a party to the transaction and a party for the purpose of the arbitration clause.